IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

TED GUILLOTTE,                        §
                                      §
            Plaintiff,                §
                                      §
v.                                    §
                                      §
ENERGY PARTNERS LTD. d/b/a            §
DELAWARE ENERGY PARTNERS, LTD.;       §
ENERGY PARTNERS 1998 INC.;            §        CIVIL ACTION NO. G-06-0671
ENERGY PARTNERS OF DELAWARE,          §
LTD.; HEATHER LYNN, INC.;             §
BLAKE OFFSHORE, LLC; PRODUCTION       §
MANAGEMENT INDUSTRIES, LLC; M/V       §
CAPTAIN RAYNE; and ST 41B MOPU,       §
                                      §
            Defendants.               §

## MEMORANDUM OPINION AND ORDER

Plaintiff, Ted Guillotte, brought this action against defendants, Energy Partners Ltd. (EPL), Heather Lynn, Inc., Blake Offshore, LLC (Blake), Production Management Industries, LLC (PMI), M/V Captain Rayne, and ST 41B MOPU (Movable Offshore Production Unit), for negligence. In July of 2007 the court granted defendant Heather Lynn Inc.'s motion to dismiss for lack of personal jurisdiction (Docket Entry No. 77). Pending before the court are Plaintiff's Opposed Motion for Leave to File His Third Amended Complaint (Docket Entry No. 48), Defendant Energy Partners Ltd.'s Motion for Summary Judgment (Docket Entry No. 51), Defendant Blake Offshore, LLC's Motion for Summary Judgment (Docket Entry No. 52), Production Management Industries, LLC's Opposed Motion for Leave to

File Cross-Claim Against Energy Partners, Ltd. (Docket Entry No. 54), Production Management Industries, LLC's Opposed Motion for Leave to File Cross-Claim Against Heather Lynn, Inc. and Blake Offshore, LLC (Docket Entry No. 61), and Plaintiff's Motion in Limine (Docket Entry No. 71).  For the reasons stated below plaintiff's motion for leave to amend and defendants' motions for summary judgment will be denied, PMI's motions for leave to file cross-claims will be granted as to EPL and Blake and denied as to Heather Lynn, and plaintiff's motion in limine will be denied without prejudice.

### I.  __EPL and Blake's Motions for Summary Judgment__

In his first amended complaint plaintiff asserts that his claims are "maintained under General Maritime Law."[1]  Asserting that "the jack-up rig ST 41B MOPU is on the Outer Continental Shelf [OCS] offshore of Louisiana,"[2] Blake and EPL argue that plaintiff's claims are not subject to general maritime law but, instead, to Louisiana law, which is made applicable by the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1331, et seq.  EPL and Blake assert that under Louisiana law a principal is not liable for the offenses an independent contractor commits in the course of

---

[1]Plaintiff's First Amended Complaint, Docket Entry No. 18, p. 1 ¶ 1.

[2]Defendant Energy Partners Ltd.'s Motion for Summary Judgment, Docket Entry No. 51, p. 3 ¶ 4; Defendant Blake Offshore, LLC's Motion for Summary Judgment, Docket Entry No. 52, p. 3 ¶ 4.

performing its contractual duties unless at least one of two exceptions applies: the activity at issue was ultra hazardous and/or the defendants maintained operational control over the subcontractor performing the activity. EPL and Blake argue that they are entitled to summary judgment because neither of the two exceptions applies in this case. Plaintiff disputes the applicability of Louisiana law. Although plaintiff does not dispute the effect that Louisiana law would have on his claims against Blake, he argues that even under Louisiana law EPL should not be able to escape its decision to order a personnel transfer in poor weather conditions because the evidence raises genuine issues of material fact regarding EPL's control and actual knowledge.

## A.    Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment. Fed. R. Civ. P. 56(c). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

-3-

the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 106 S.Ct. 2548, 2552 (1986).   A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not <u>negate</u> the elements of the nonmovant's case." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (<u>en banc</u>), (quoting <u>Celotex</u>, 106 S.Ct. at 2553-2554).   If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. <u>Id.</u> (citing <u>Celotex</u>, 106 S.Ct. at 2553-2554).   In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Products Inc.</u>, 120 S.Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." <u>Little</u>, 37 F.3d at 1075.

**B.   Undisputed Facts[3]**

Plaintiff brings this action for bodily injuries sustained while being transferred from the M/V Captain Rayne, a boat owned and operated by defendant Heather Lynn, Inc., to MOPU, a jack-up

---

[3]Unless otherwise noted, the undisputed facts are recited in the Admissions of Fact, Joint Pretrial Order, Docket Entry No. 68, pp. 7-8.

drilling rig leased to defendant EPL by its owner, defendant Blake. When plaintiff was injured

> (1)   the MOPU was jacked up in South Timbalier Block 41 (ST 41B) outside the territorial waters of Louisiana on the Outer Continental Shelf, Gulf of Mexico,[4]
>
> (2)   plaintiff was employed as a maintenance supervisor by Parkway Machine & Mechanical (Parkway) tasked with completing an engine overhaul on the MOPU,[5] and
>
> (3)   the crane and its operator, Michael Childers, who was employed by defendant PMI, were located on the MOPU,[6] which is a vessel.[7]

Parkway was a contractor or subcontractor of EPL pursuant to a Master Service Agreement, and PMI was working under contract to EPL to provide "production operation and maintenance services" for EPL's properties.   Plaintiff alleges that he suffered bodily injuries when the personnel basket in which he was traveling twice hit the deck of the M/V Captain Rayne.[8]

---

[4]See MOPU Lease Agreement, p. 7 ¶ 10.1, Exhibit A attached to Docket Entry Nos. 51 and 52, and deposition of Michael Childers, Exhibit E attached to Docket Entry Nos. 51 and 52, pp. 214-15.

[5]See Plaintiff's Deposition, Exhibit B attached to Docket Entry Nos. 51 and 52, pp. 25 and 27.

[6]See Plaintiff's First Amended Complaint, Docket Entry No. 18, p. 3 ¶ 12, and Deposition of Michael Childers, Exhibit E attached to Docket Entry Nos. 51 and 52, pp. 146 and 214.

[7]See Docket Entry No. 51, p. 3 ¶ 5; Docket Entry No. 52, p. 3 ¶ 5.  See also Plaintiff's Response to Energy Partners Ltd.'s Motion for Summary Judgment, Docket Entry No. 85, p. 3; Plaintiff's Response to Blake Offshore, LLC's Motion for Summary Judgment, Docket Entry No. 86, p. 2.

[8]See Plaintiff's First Amended Complaint, Docket Entry No. 18, p. 3 ¶ 12.  See also Plaintiff's Deposition, Exhibit B
(continued...)

**C.   Analysis**

   1.   Applicability of OCSLA

   OCSLA is the federal body of law that governs cases and controversies "arising out of, or in connection with . . . any operation conducted on the [OCS] which involves exploration, development, or production of the minerals, of the subsoil and seabed of the [OCS], or which involves rights to such minerals . . . ."   43 U.S.C. § 1349(b)(1)(A).   For OCSLA to apply to the plaintiff's claims, the injuries at issue must have occurred on the OCS and must have arisen out of or relate to mineral production. To determine whether an action arises out of or relates to mineral production, the Fifth Circuit applies a broad "but for" test. See Hufnagel v. Omega Service Industries, Inc., 182 F.3d 340, 350 (5th Cir. 1999).   The proper inquiry in such cases is whether the worker's employment furthered mineral development and whether "but for" that employment, the worker would not have been injured.   Id.

   Plaintiff does not dispute that OCSLA applies to his claims. Facts admitted by both the plaintiff and the defendants in the Joint Pretrial Order filed on July 12, 2007 (Docket Entry No. 68), include the following statement:   "At the time of the alleged incident in suit, the MOPU No. 8 was jacked up in South Timbalier Block 41B outside the territorial waters of Louisiana on the Outer

---

   [8](...continued)
attached to Plaintiff's Response to Energy Partners Ltd.'s Motion for Summary Judgment, Docket Entry No. 85, p. 40.

Continental Shelf, Gulf of Mexico."[9]   Nor does plaintiff dispute
that the repair work he was tasked to perform on the MOPU
furthered mineral development.  See Demette v. Falcon Drilling Co.,
Inc., 280 F.3d 492, 494 (5th Cir. 2002) (finding that OCSLA applies
to a rig jacked up over the OCS).   Thus, the court concludes that
OCSLA applies to plaintiff's claims.   Nevertheless, "OCSLA does not
displace general maritime law, [and] substantive maritime law
continues to govern where both OCSLA and general maritime law could
apply."  Hufnagel, 182 F.3d at 350 (citing Smith v. Penrod Drilling
Corp., 960 F.2d 456, 459 (5th Cir. 1992)).   See also Demette, 280
F.3d at 494-97 (finding that state law did not apply in that case
by operation of OCSLA).

       2.   Applicability of Louisiana Law

       "The [OCSLA] provides comprehensive choice-of-law rules and
federal regulation to a wide range of activity occurring beyond the
territorial waters of the states on the outer continental shelf of
the United States."  Demette, 280 F.3d at 495.   In determining
which law to apply in OCSLA cases, the Fifth Circuit has held that

> [t]hree conditions must be met before state law is
> adopted as surrogate federal law under OCSLA:  "(1) The
> controversy must arise on a situs covered by OCSLA (i.e.
> the subsoil, seabed, or artificial structures permanently
> or temporarily attached thereto).  (2) Federal maritime
> law must not apply of its own force.  (3) The state law
> must not be inconsistent with [f]ederal law."

---

[9]Joint Pretrial Order, Docket Entry No. 68, p. 8.

<u>Strong v. B.P. Exploration & Production, Inc.</u>, 440 F.3d 665, 668 (5th Cir. 2006) (quoting <u>Union Texas Petroleum Corp. v. PLT Engineering, Inc.</u>, 895 F.2d 1043, 1047 (5th Cir. 1990)). <u>See also</u> <u>Demette</u>, 280 F.3d at 496.

(a)  OCSLA Situs Test

Asserting that "the first factor is the only factor . . . that . . . presents a close question,"[10] defendants argue that "[t]he MOPU in question qualifies as an OCSLA 'situs,' within the scope of [43 U.S.C.] § 1331(a)(1), as it is a vessel 'within the meaning of admiralty law' and a 'device temporarily attached to the seabed, which was erected on the OCS for the purpose of drilling for oil.'"[11]  <u>See</u> <u>Demette</u>, 280 F.3d at 496-98 (recognizing jacked-up rig as an OCSLA situs because it constitutes a device temporarily attached to the seabed).  Acknowledging only that "the first factor (OCSLA situs) might present a 'close call,'"[12] plaintiff fails to offer any facts or argument in opposition to defendant's assertion that the OCSLA situs test is satisfied in this case.  Instead, plaintiff merely contends that the cases on which defendants base their argument that Louisiana law should be applied are inapposite

---

[10]Docket Entry Nos. 51 and 52, p. 3 ¶ 5.

[11]<u>Id.</u>

[12]Plaintiff's Response to Energy Partners Ltd.'s Motion for Summary Judgment, Docket Entry No. 85, p. 6; Plaintiff's Response to Blake Offshore, LLC's Motion for Summary Judgment, Docket Entry No. 86, p. 5.

because they concern fixed platforms and that his injuries occurred while he was inside a personnel transfer basket attached to a crane located on a jack-up rig that all parties agree was not a fixed platform but, instead, a vessel.

The Supreme Court has held that 43 U.S.C. § 1333(a)(1) creates a "situs" requirement for the application of the OCSLA.   See Offshore Logistics, Inc. v. Tallentire, 106 S.Ct. 2485, 2491-93 & n.2 (1986).   See also Mills v. Director, Office of Workers' Compensation Programs, United States Department of Labor, 877 F.2d 356 (5th Cir. 1989) (en banc) (interpreting § 1333(b) and holding that it could not apply to injuries that do not occur on or over the OCS).   Upon analyzing 43 U.S.C. § 1333(a)(1) the Fifth Circuit concluded that the OCSLA "applies to two primary sets of subjects: (1) 'to the subsoil and seabed of the [OCS]'; and (2) 'to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed.'"   Demette, 280 F.3d at 496.   The Fifth Circuit has explained that

> [t]his latter category is further divided into two categories:   [(1)] those artificial islands, installations, or devices "erected" on the OCS "for the purpose of exploring for, developing, or producing resources" from the OCS, and [(2)] those "other than a ship or vessel" whose purpose is "transporting such resources."

Id. (citing 43 U.S.C. § 1333(a)(1)).   These distinctions have been incorporated into the following rule:

> The OCSLA applies to all of the following locations:
>
> (1)  the subsoil and seabed of the OCS;

-9-

     (2)   any   artificial   island,   installation,   or   other
           device if

          (a)   it is permanently or temporarily attached to
               the seabed of the OCS, and

          (b)   it has been erected on the seabed of the OCS,
               and

          (c)   its presence on the OCS is to explore for,
               develop, or produce resources from the OCS;

     (3)   any   artificial   island,   installation,   or   other
           device if

          (a)   it is permanently or temporarily attached to
               the seabed of the OCS, and

          (b)   it is not a ship or vessel, and

          (c)   its  presence  on  the  OCS  is  to  transport
               resources from the OCS.

Id. at 497.

     Plaintiff's  deposition  testimony  establishes  that  he  was injured  while  inside  a  personnel  transfer  basket  attached  to  a crane located on the MOPU.[13]  All parties admit that when plaintiff was  injured  the  MOPU  was  a  vessel  jacked  up  on  the  OCS.[14]   In Demette  the  Fifth  Circuit  held  that  a  jack-up  rig  constitutes  an OCSLA situs because a rig, when jacked up, is "a device temporarily attached  to  the  seabed,  which  was  erected  on  the  OCS  for  the purpose of drilling for oil."  280 F.3d at 498.  See also Diamond Offshore Co. v. A & B Builders, Inc., 302 F.3d 531, 543-45 (5th

---

     [13]See Plaintiff's Deposition, Exhibit B attached to Plaintiff's Response to Energy Partners Ltd.'s Motion for Summary Judgment, Docket Entry No. 85, p. 40.

     [14]Joint Pretrial Order, Docket Entry No. 68, p. 8.

Cir. 2002).   Because it is undisputed that when plaintiff was injured he was inside a personnel transfer basket attached to a crane located on the MOPU that was jacked up on the OCS, the court concludes that the OCSLA situs test is met.

(b)  Applicability of Maritime Law by Its Own Force

Citing <u>Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.</u>, 115 S.Ct. 1043, 1048 (1995), defendants argue that plaintiff's claims are governed by Louisiana law because "there is no federal maritime law that applies of its own force."[15]   In <u>Grubart</u> the Supreme Court explained that

> a party seeking to invoke admiralty jurisdiction pursuant
> to 28 U.S.C. § 1333(1) over a tort claim must satisfy
> conditions both of location and of connection with
> maritime activity.   A court applying the location test
> must determine whether the tort occurred on navigable
> water or whether injury suffered on land was caused by a
> vessel on navigable water. . . .  The connection test
> raises two issues.   A court, first, must "assess the
> general features of the type of incident involved," . . .
> to determine whether the incident has "a potentially
> disruptive impact on maritime commerce," . . . . Second,
> a court must determine whether "the general character" of
> the "activity giving rise to the incident" shows a
> "substantial relationship to traditional maritime
> activity."

<u>Id.</u> (quoting <u>Sisson v. Ruby</u>, 110 S.Ct. 2892 (1990)).

### (1)  Maritime Location Test

For the maritime location test to be met, plaintiff's injury must have occurred on navigable water or if the injury occurred on

_____

[15]Docket Entry Nos. 51 and 52, p. 4 ¶ 6.

land must have been caused by a vessel on navigable water.   See Grubart, 115 S.Ct. at 1048; Hufnagel, 182 F.3d at 350-51.  In this case plaintiff's injury occurred while he was being transferred from the M/V Captain Rayne to the MOPU to complete an engine overhaul on the MOPU, a vessel jacked up over navigable waters. Defendants concede that the maritime location test is satisfied.[16] See Demette, 280 F.3d at 498 n.18 (holding that jack-up rig, although jacked up and not "under sail," qualifies as a vessel on navigable waters).

### (2)  Maritime Activity Test

Courts engage in a two-part inquiry in determining whether there exists a connection to traditional maritime activity.  Courts must first "'assess the general features of the type of incident involved,' . . . to determine whether the incident has a 'potentially disruptive impact on maritime commerce.'"  Grubart, 115 S.Ct. at 1048.  "Second, a court must determine whether 'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'"  Id. (quoting Sisson, 110 S.Ct. at 2896 and n.2).  The key inquiry is whether the allegedly tortious activity is "so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply

---

[16]Id.

-12-

in the suit at hand." Id. at 1051.  See also Texaco Exploration
and Production, Inc. v. AmClyde Engineering Products Co., Inc., 448
F.3d 760, 770-71 (5th Cir.), cert. denied, 127 S.Ct. 670 (2006)
(rejecting invocation of admiralty jurisdiction in a case that
involved products liability claims on the OCS, finding that the
plaintiff's causes of action were insufficiently connected to
traditional maritime activity to support the application of
admiralty law because the accident did not occur while the
transportation function of the vessel was being utilized but,
instead, during the construction of a platform on the OCS).

Instead of analyzing the facts of this case in terms of the
two-part test for determining connection to traditional maritime
activity, defendants simply assert that

> [t]his question is answered in a number of cases. *See
> Hodgen v. Forest Oil Corp.,* 115 F.3d 358 (5th Cir.
> 1997)(finding process of moving from platform to vessel
> is not a separable maritime obligation within a non-
> maritime contract); *see also Hollier v. Union Texas
> Petroleum Corp.*, 972 F.2d 662, 665 (5th Cir. 1992)
> (refusing to label "the act of stepping from the crew
> boat to the platform" as a "separable maritime obligation
> in a contract to perform services on a platform"); *Simms
> v. Roclan Energy Servs., Inc.,* 137 F.Supp.2d 731 (W.D.
> La. 2001) (where plaintiff was being lowered in personal
> basket from platform to vessel, there was no claim under
> general maritime law as to platform owner because
> incident lacked connexity with traditional maritime
> activity required for application of substantive maritime
> law); *Dennis v. Bud's Boat Rental, Inc.*, 987 F.Supp. 948
> (E.D. La. 1997) (where plaintiff allegedly injured during
> transfer via personnel basket from crew boat, court found
> majority of work performed was on platform, benefited
> [sic] functioning of platform and fulfillment of its
> mission and the work was not inherently maritime); *West
> v. Chevron U.S.A., Inc.*, 615 F.Supp. 377 (D.C. La. 1985)

(requisite maritime nexus lacking where personal injuries allegedly sustained when plaintiff was dropped from personnel basket attached to fixed platform onto vessel).[17]

Asserting that the MOPU is a vessel, the M/V Captain Rayne is a vessel, the crane involved in the personnel transfer was located on the MOPU, and that plaintiff was boarding the MOPU to complete an engine overhaul, plaintiff argues that the outcome of this test is governed by the Fifth Circuit's analysis in Strong, 440 F.3d at 665. The plaintiff in Strong was an employee of Cardinal Wireline Services (Cardinal), which had been called by B.P. Amoco to plug an oil well on the OCS. Id. at 667. Plaintiff was transported to the platform in a utility boat. When the plaintiff arrived at the platform, a liftboat was jacked up next to the platform to provide additional workspace for the various operations at the well. When Cardinal finished its work, the liftboat crane was used to transport plaintiff's tools from the platform to the liftboat deck. During the process the plaintiff was injured because of the lack of room on the liftboat's deck. Id. Plaintiff argued that his claims were covered by OCSLA, but BP Amoco argued that his claims fell under general maritime law. Id. at 668. The Fifth Circuit held that the plaintiff's claims against BP Amoco were covered by general maritime law primarily because the accident occurred as a result of negligence on or in connection with a vessel:

_____

[17]Docket Entry No. 51, pp. 4-5 ¶ 6.

-14-

We agree with B.P. that failing to provide a safe
workplace aboard a vessel is a maritime tort. The
liftboat, although jacked up and not "under sail,"
qualifies as a vessel on navigable waters. See Demette,
280 F.3d at 498 n. 18. Thus, the location requirement of
Grubart is satisfied. Furthermore, s shipowner, or
charterer in control of a vessel, owes a duty of care to
those working on the vessel "with respect to the
condition of the ship's gear, equipment, tools, and work
space." Scindia Steam Navigation Co. v. De Los Santos,
451 U.S. 156, 157, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981).
The Supreme Court has consistently applied maritime law
to actions arising out of a failure adequately to satisfy
that duty. See id. . . . Thus, by asserting that his
injury was caused by the cluttered, unsafe condition of
the liftboat deck, Strong has stated a maritime tort
claim.

Id. at 669-670. Plaintiff argues that unlike the cases cited by

EPL and Blake, the Fifth Circuit's decision in Strong controls the

outcome of this issue.[18]

Defendants reply that each of the cases they cited

was cited for the proposition that the activity of using
a crane and lift basket is not of the general maritime
character and this activity does not show a substantial
relationship to general maritime activity. Regardless of
whether these occurred on a fixed platform or a jack-up
rig, the use of a crane to move personnel is not a
traditional general maritime activity. Therefore,
transfers of personnel to [] jack up rigs fixed to the
outer continental shelf are not general maritime
activities.[19]

---

[18]Plaintiff's Response to Energy Partners Ltd.'s Motion for
Summary Judgment, Docket Entry No. 85, p. 8; Plaintiff's Response
to Blake Offshore, LLC's Motion for Summary Judgment, Docket
Entry No. 86, p. 7.

[19]Defendant Energy Partners Ltd.'s Reply to Plaintiff's
Response to Defendants' Motion for Summary Judgment, Docket Entry
No. 87, p. 3 ¶ 5; Defendant Blake Offshore, LLC's Reply to
Plaintiff's Response to Defendants' Motion for Summary Judgment,
Docket Entry No. 88, p. 3 ¶ 5.

(i)  Disruptive Impact on Maritime Commerce

Plaintiff asserts that despite high wind and rough seas, EPL and Blake "instructed the crane operator on the MOPU, who was employed by Defendant Production Management Industries, LLC ("PMI"), to use the vessel's crane to transfer [plaintiff] . . . to the MOPU."[20]  Plaintiff also asserts that EPL is liable for failing to properly train and supervise its employees regarding crane operation, failing to take adequate precautions in bad weather, proceeding with the transfer under hazardous circumstances, failing to properly operate the crane, failing to provide adequate safety equipment, and ordering an operation that was clearly unsafe.[21]

The court concludes that this incident had a potentially disruptive impact on maritime commerce because plaintiff's injuries and subsequent inability to complete the overhaul of the MOPU's engine could have had a disruptive impact on maritime commerce by stalling or delaying the primary activity of the MOPU, which even though jacked up, remains a vessel.  See Demette, 280 F.3d at 498 n.18.  See also Coats v. Penrod Drilling Corp., 61 F.3d 1113, 1118-19 (5th Cir. 1995) (describing incident at issue in general terms as an injury to a worker while repairing and maintaining a jack-up

---

[20]Plaintiff's Response to Energy Partners Ltd.'s Motion for Summary Judgment, Docket Entry No. 85, p. 3; Plaintiff's Response to Blake Offshore, LLC's Motion for Summary Judgment, Docket Entry No. 86, p. 2.

[21]Plaintiff's Response to Energy Partners Ltd.'s Motion for Summary Judgment, Docket Entry No. 85, pp. 3-4.

rig in navigable waters and concluding that "[w]ithout a doubt, worker injuries, particularly to those involved in repair and maintenance, can have a disruptive impact on maritime commerce by stalling or delaying the primary activity of the vessel").

(ii) Substantial Relationship to Traditional
Maritime Activity

The parties have each attempted to characterize the incident at issue in this case in their favor. Plaintiff maintains that the relevant activity is analogous to that at issue in Coats, 61 F.3d at 1118-19, i.e., injury to a worker tasked with repairing and maintaining a jack-up rig in navigable waters. EPL and Blake contend that the relevant activity and alleged cause of the plaintiff's injuries was a crane transfer via personnel transfer basket. In support of their position that crane transfers of personnel do not exhibit a substantial connection to traditional maritime activity, defendants cite Dennis, 987 F.Supp. at 948, and West, 615 F.Supp. at 377.

In Dennis, 987 F.Supp. at 948, the plaintiff was injured on the deck of a vessel while he was located inside a personnel transfer basket attached to a crane located on a fixed platform. Observing that the plaintiff "was not actually working but being transported" when he was injured, the court examined his job duties in order to determine if federal maritime law should apply of its own force. Finding that the plaintiff was tasked with installing

-17-

and trouble shooting communication equipment on both a fixed platform and a vessel in navigable waters, that he spent more time working on the fixed platform than on the vessel, that all of his work benefitted the functioning of the platform and thus the fulfillment of its mission, and that the nature of the work — that of installing and repairing communication equipment — was not inherently maritime, the court concluded that federal maritime law did not apply to the plaintiff's injury. West, 615 F.Supp. 377, was a suit for injuries to platform workers who, while being lifted by a crane based on a fixed platform from the platform to a crew boat, were injured when they were dropped onto the crew boat's deck. The workers' suit against the platform operator was held not to be maritime because the workers were injured in the course of their service to a fixed platform.

The court is not persuaded that Dennis or West support the defendants' contention that the relevant activity and alleged cause of the plaintiff's injuries is correctly characterized as a crane transfer via personnel transfer basket since neither the Dennis nor the West court analyzed the connection of that activity to traditional maritime activity. Instead, both courts analyzed the substantive nature of the work with which the injured plaintiffs had been tasked in order to determine if there was a substantial connection to traditional maritime activity. Like the Dennis and West courts, this court is not persuaded that the activity to be

-18-

analyzed for its connection to traditional maritime activity is the basket transfer of personnel but, instead, the work that the injured plaintiff was tasked to perform.

Unlike the Dennis and West plaintiffs whom those courts found were tasked to perform work intended to benefit the mission of fixed platforms lacking any connection to traditional maritime activity (i.e., installing and trouble shooting communication equipment in Dennis and "quintessential platform work" in West), the plaintiff in this case was a mechanic tasked to complete an overhaul of the engine on the MOPU, a vessel jacked up above navigable waters.  As the defendants acknowledge,[22] in Coats, 61 F.3d at 1119, the Fifth Circuit held that an employee's claim for personal injuries sustained while repairing and maintaining a jack-up rig had a sufficient maritime location and connection to support admiralty jurisdiction.  Although plaintiff was not repairing or maintaining a jack-up rig at the time of his injury, he was being transferred to the jack-up rig in order to complete the task of overhauling its engine.  This court concludes that the fact that plaintiff was injured while attempting to board the MOPU, a rig

_____

[22]See Defendant Energy Partners Ltd.'s Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 87, p. 2 ¶ 3, and Defendant Blake Offshore, LLC's Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 88, p. 2 ¶ 3 ("Plaintiff is correct in stating that the Fifth Circuit found that an employee's claim for personal injuries sustained while repairing and maintaining a jack-up rig had a sufficient maritime location and connection to support admiralty jurisdiction.").

jacked up above navigable waters, in order to complete the overhaul
of its engine bears a substantial connection to traditional
maritime activity because "[p]roviding compensation for shipboard
injuries is a traditional function of the admiralty laws."   Id.
(citing Sisson, 110 S.Ct. at 2898-92).

   3.   Conclusion

   For the reasons explained above the court concludes that
plaintiff's claims for personal injuries sustained while attempting
to transfer from the M/V Captain Rayne to the MOPU to complete an
overhaul of the MOPU's engine while the MOPU was jacked up above
navigable waters demonstrates a sufficient maritime location and
connection to traditional maritime activity for general maritime
law to apply by its own force.

   Because the court has concluded that general maritime law
applies by its own force to plaintiff's claims for personal
injuries sustained while attempting to transfer from the M/V
Captain Rayne to the MOPU in a personnel transfer basket attached
to a crane located on the MOPU, the court concludes that plain-
tiff's claims are governed by general maritime law and not by
Louisiana law made applicable by the OCSLA.

## II.   **Plaintiff's Motion to File Third Amended Complaint**

   Plaintiff seeks leave to file his Third Amended Complaint so
that he may refine the allegations underlying this lawsuit and
request a trial by jury.  Plaintiff has not explained the reasons

for which he seeks leave to refine his allegations, but does explain that he is not actually seeking a jury trial but, instead, for trial by an advisory jury.  Plaintiff explains that this case was originally before a judge whose local practice was to set cases such as this on a jury docket to be heard by an advisory jury, and that since the case has been transferred to the undersigned judge, plaintiff is unsure that it will remain on a jury docket.[23]

In his first amended complaint plaintiff pleaded only general maritime law as the basis for the court's jurisdiction; and for the reasons explained in § II, above, the court has concluded that plaintiff's claims are governed by general maritime law.  In the Joint Pretrial Order filed on July 12, 2007, the only parties remaining in this action, i.e., plaintiff, EPL, Blake, and PMI, stated that they "believe this United States District Court has jurisdiction over the parties and the subject matter of this suit because Plaintiff's claims are within this Court's admiralty and maritime jurisdiction and present a federal question pursuant to 28 U.S.C. § 1331."[24]  General maritime claims do not carry the right to a jury trial.  See Fitzgerald v. United States Lines Co., 83 S.Ct. 1646, 1650 (1963) (general maritime law does not provide the right to a jury trial); Russell v. Atlantic & Gulf Stevedores, 625 F.2d 71, 72 (5th Cir. 1980).  Since with or without an advisory

_____

[23]See Plaintiff's Opposed Motion for Leave to File His Third Amended Complaint, Docket Entry No. 48, pp. 1-2.

[24]Joint Pretrial Order, Docket Entry No. 68, p. 3 ¶ 3.B.

-21-

jury, the court must try the matter itself, the court declines to empanel an advisory jury.  See <u>Verdin v. C. & B. Boat Company, Inc.</u>, 860 F.2d 150, 154 (5th Cir. 1988) ("an advisory jury's findings are in no way binding on the court").  Because plaintiff has failed to explain why he should be allowed to amend his complaint to refine his claims, the plaintiff's motion to file a third amended complaint will be denied, and this action will be tried to the court without an advisory jury.

### III.  **PMI's Motions to File Cross-claims**

PMI seeks leave to file cross-claims against EPL, Heather Lynn, and Blake for indemnity or, alternatively, for contribution under general maritime law.  Although PMI's motions are captioned "opposed," neither EPL nor Blake has filed a response in opposition to PMI's pending motions for leave to file cross-claims against them.  Under Local Rule 7.4 a defendant's "[f]ailure to respond will be taken as a representation of no opposition."  S.D.Tex.R. 7.4 (2000).  Accordingly, PMI's motions will be granted as to EPL and Blake, but denied as to Heather Lynn because in July of 2007 the court granted Heather Lynn's motion to dismiss for lack of personal jurisdiction (Docket Entry No. 77).

### IV.  **Plaintiff's Motion in Limine**

Plaintiff's motion in limine will be denied without prejudice. On the Friday before trial the parties shall submit a joint statement identifying the paragraph numbers of all motions in

limine to which they have not agreed and the reasons why agreement has not been reached.

## V.  Conclusions and Order

For the reasons stated above, Plaintiff's Opposed Motion for Leave to File His Third Amended Complaint (Docket Entry No. 48) is **DENIED**; Defendant Energy Partners Ltd.'s Motion for Summary Judgment (Docket Entry No. 51) is **DENIED**; Defendant Blake Offshore, LLC's Motion for Summary Judgment (Docket Entry No. 52) is **DENIED**; Production Management Industries, LLC's Opposed Motion for Leave to File Cross-Claim Against Energy Partners, Ltd. (Docket Entry No. 54) is **GRANTED**; Production Management Industries, LLC's Opposed Motion for Leave to File Cross-Claim Against Heather Lynn, Inc. and Blake Offshore, LLC (Docket Entry No. 61) is **GRANTED** as to Blake Offshore, LLC and **DENIED** as to Heather Lynn; and Plaintiff's Motion in Limine (Docket Entry No. 71) is **DENIED WITHOUT PREJUDICE**.

The discovery cut-off date is April 25, 2008.  The joint pretrial order will be due May 2, 2008.  Docket call will be held on May 9, 2008, at 4:00 p.m. in Courtroom 9B, 9th Floor, United States Courthouse, 515 Rusk Avenue, Houston, Texas.

**SIGNED** at Houston, Texas, on this the 26th day of March, 2008.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE